In re STERLING WH COMPANY, LLC, Debtor.

ProLogis Park Gateway Phase II Condominium Association, Movant,

v.

Sterling WH Company, LLC, Respondent.

No. 09–18914–RGM.

United States Bankruptcy Court, E.D. Virginia, Alexandria Division.

April 3, 2012.

Christopher L. Rogan, Rogan Law Firm, PLLC, Leesburg, VA, for Debtor.

## MEMORANDUM OPINION

ROBERT G. MAYER, Bankruptcy Judge.

The question presented in this contested matter is whether a chapter 11 case must

be converted or dismissed even if the debtor has cured its default under its confirmed plan. ProLogis Park Gateway Phase II Condominium Association filed a motion under § 1112(b) of the Bankruptcy Code seeking to convert or dismiss this case, asserting that the debtor failed to make two of three quarterly payments of $1,846.36 due to it which it asserted was a material default in the performance of the debtor's confirmed chapter 11 plan. 11 U.S.C. § 1112(b)(4)(N). The debtor acknowledged that it had not made the two payments, but argued that it was completing negotiations for the sale or refinancing of its real property which would not only promptly cure the default to ProLogis, but would also pay all of its creditors the full amounts due to them under the plan. As it turns out, the debtor was negotiating a sale/lease-back with ProLogis, L.P., the prior owner of the debtor's real property and the current owner of the other four buildings in the condominium park in which the debtor's building was located.[1]

### Position of the Parties

ProLogis asserts that in a chapter 11 case in which a plan has been confirmed, once there is cause under § 1112(b)[2]—in this instance a material default by the debtor under a confirmed plan as provided under § 1112(b)(4)(N)—the court is required to convert or dismiss the case even if the debtor cures or can cure the default within a reasonable time. ProLogis focuses on the mandatory language in

§ 1112(b)(1) which states that "the court **shall** convert … or dismiss a case … whichever is in the best interests of creditors and the estate for cause." (emphasis added).[3] Thus, ProLogis argues, the court has no discretion but to convert or dismiss this case.

The debtor focuses on the introductory clause to § 1112(b)(1) which, it argues, modifies § 1112(b)(1) when it states "[e]xcept as provided in paragraph (2)". Section 1112(b)(2), in turn provides for a limited ability to cure defaults. It states:

(b)(2) The court may not convert a case under this chapter to a case under Chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party is interest establishes that—

(A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and

(B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)—

---

1. ProLogis, L.P., and the debtor are all of the members of the condominium association, ProLogis Park Gateway Phase II Condominium Association, which filed the motion to dismiss.

2. Section 1112(b)(4) is a non-exclusive list of matters that constitute cause and includes a material default by the debtor with respect to a confirmed plan, the basis of ProLogis' motion. 11 U.S.C. § 1112(b)(4)(N).

3. Section 1112(b)(1) states:

Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

(i) for which there exists a reasonable justification for the act or omission; and

(ii) that will be cured within a reasonable period of time fixed by the court.

ProLogis replies that § 1112(b)(2) applies only if a plan has not been confirmed. It contains two requirements: (1) the reasonable likelihood of confirmation of a plan within a reasonable time; and (2)(i) a reasonable justification for the act or omission that constitutes grounds for cause for conversion or dismissal and (ii) the ability to cure the default within a reasonable period of time. It argues that when a plan has been confirmed, § 1112(b)(2)(A) cannot apply because the section is written in the future tense—that a plan *will be* confirmed. Because § 1112(b)(2)(A) and (B) are in the conjunctive, both must be satisfied. Section 1112(b)(2)(A) can no longer be satisfied because a plan *has been* confirmed and the conjunctive cannot be satisfied. This was Congress' way, ProLogis asserts, of providing that the cure provisions of § 1112(b)(2) are only available in a chapter 11 case before confirmation. Af-

ter confirmation, defaults may not be cured and a case must be converted or dismissed.[4]

### Discussion

### Legal Standard to Convert or Dismiss

■ The introductory clause to § 1112(b)(1) is clear and unambiguous: A case will be converted or dismissed *unless* the provisions of § 1112(b)(2) apply. This is followed by the first words of § 1112(b)(2) which are equally clear and unambiguous: "The court may not convert ... or dismiss ... if ..." Neither the opening words of § 1112(b)(1) nor § 1112(b)(2) limit the temporal applicability of § 1112(b)(2) to the pre-confirmation time period. They apply at all times during the pendency of a chapter 11 case, both pre-confirmation and post-confirmation. Nor does § 1112(b)(2)(B) contain a limitation on of its applicability to the pre- or post-confirmation period.[5] The better understanding of § 1112(b) is that if no plan has been confirmed, § 1112(b)(2)(A) imposes the additional requirement that a plan be confirmable within a reasonable time or

---

**4.** ProLogis states its argument as follows:

In order for [Section 1112(b)(2)] to be applicable, the court is required to make a finding that "there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time." 11 U.S.C. § 1112(b)(2). That unambiguous statutory language makes plain that the exception to the *mandatory* requirement of conversion or dismissal established in Paragraph 2 of Section 1112(b) applies only to *pre-confirmation* cases. It is therefore unavailable in cases such as this one, where the "cause" for conversion or dismissal is the Reorganized Debtor's material default under the terms of a confirmed plan. See 11 U.S.C. § 1112(b)(4)(N).

ProLogis Condo Association's Reply to the Memoranda of U.S. Bank and the Reorga-

nized Debtor with Respect to the Motions to Convert or Dismiss at 3. (Docket Entry 295)(emphasis in original).

**5.** One effect of ProLogis' interpretation is to give a single creditor undue leverage. Once there is cause-and the causes enumerated in § 1112(b)(4) are not the exclusive causes that may warrant conversion or dismissal—a creditor could file a motion to convert or dismiss and require the conversion or dismissal of the case notwithstanding that the overwhelming majority of creditors may wish the case to proceed even though the debtor is not performing *as anticipated at confirmation of the* plan. The creditor would be in a position to act as a spoiler, that is, demand more than he would be entitled to under the confirmed plan, likely to the detriment of the other creditors, or insist that the case be converted or dismissed.

the statutorily requisite time periods. This requirement is unnecessary if a plan has already been confirmed.

Good purpose is served by requiring the court to evaluate the ability of a chapter 11 debtor to achieve confirmation. When cause exists, it may reflect on the ability of a chapter 11 debtor to reorganize. While no road to confirmation is without obstacles, the ability to overcome them is a factor in determining whether a case should continue under chapter 11. Achieving confirmation, though, is a significant milestone on the way to a successful reorganization. Confirmation necessarily means that the requirements of 11 U.S.C. § 1129 were satisfied. The creditors voted on the plan. At least one impaired class approved the plan. Feasibility was shown. The best interests of the creditors were determined. The standard in § 1112(b)(2)(A) is lower than the confirmation standard in § 1129. Section 1112(b)(2)(A) only requires that there be a reasonable likelihood that a plan will be confirmed. It is not a confirmation hearing. It is an evaluation of the likelihood of achieving confirmation. Section 1112 recognizes that there may be difficulties during both the pre-confirmation and the post-confirmation periods and essentially sets the same standard for conversion or dismissal for both, including, when appropriate, an opportunity to cure.

This reading of § 1112(b)(2) provides an opportunity for a debtor who has defaulted on its obligations under a case prior to confirmation or under a confirmed plan to cure the default if there is a reasonable justification for the default and the default can be seasonably cured. ProLogis' interpretation is, in effect, a hair trigger for all confirmed chapter 11 plans, placing a higher burden on debtors after confirmation than during the pre-confirmation period.[6]

### Application of Standard

### The Debtor's Plan

The debtor owned a condominium unit that it leased to an affiliate. There were three classes of creditors: Loudoun County with a first priority secured lien on the property for real estate taxes of $95,376.23; U.S. Bank as trustee for a securitized mortgage trust with a first deed of trust (subject to real estate taxes) with a claim of $9,856,362.14; and the unsecured creditors of which ProLogis' claim was $142,709. The real property was worth substantially less than the debt. The debtor and the bank agreed that the property was worth $5 million.

The plan was confirmed on February 17, 2011. It provided that Loudoun County and the unsecured creditors would be paid over 60 months in quarterly payments. ProLogis' quarterly payment was $1,846.36. By a September 15, 2011 agreement with the bank,[7] the bank was to

---

**6.** ProLogis responds to the hair trigger analogy by noting that in this case cause was a *material* default under a confirmed plan. § 1112(b)(4)(N). It acknowledges that not every default is a *material* default. This would only limit the argument to the materiality of the default, not whether there was reasonable justification for the default and an ability to cure it. More to the point, however, § 1112(b)(4)(N) is but one cause for conversion or dismissal. There are other provisions of § 1112(b)(4) which do not require materiality. For example, there is non-payment of

taxes which Loudoun County raised in this case. If taxes are paid one day late, according to ProLogis the case must be converted or dismissed. There are other similar defaults that do not take materiality into account: the failure to comply with an order of court; to pay fees or charges; or to pay a domestic support obligation. *See, e.g.,* § 1112(b)(4)(C), (E), (I), (K) and (P).

**7.** There was more involved. Wells Fargo Bank, NA, as trustee, filed the original proof of claim. After many attempts to resolve the matter with Wells Fargo, the debtor discover-

be paid $6.1 million on November 15, 2011 for its secured, unsecured and adequate protection claims, plus monthly interest until it was paid. The real property vested in the reorganized debtor upon confirmation.

### Performance under the Plan

█▌ The debtor made its first quarterly payment to ProLogis, but failed to make the second or third payment or its post-confirmation condominium fees which were also due to ProLogis. ProLogis filed its motion to dismiss on December 20, 2011, correctly asserting that the debtor had failed to make two quarterly payments of $1,846.36 each.

The debtor was also in default by failing to make its quarterly real estate tax payments due under the plan and post-confirmation real estate taxes as they became due. Anticipating that it would not be able to payoff the bank by November 15, 2011, it obtained an extension to January 15, 2012. On January 4, 2012, the bank, correctly anticipating that the debtor would not make the January 15, 2012 payment, joined in Loudoun County's motion to dismiss.[8]

The debtor filed a motion for a second extension of time within which to pay the bank on January 13, 2012. The motion asserted that on January 9, 2012, it signed a letter of intent for a sale/lease-back with ProLogis, L.P., the prior owner of the property and the current owner of the other four buildings in the condominium park in which the real property was located. The transaction would payoff the bank by January 30, 2012, and all unsecured creditors at settlement rather than over the remaining four-year term of the plan. The motion was set for a hearing on January 24, 2012, but on January 23, 2012, ProLogis, L.P., withdrew from the negotiations.

The debtor immediately entered into negotiations with another party it had previously negotiated with to sell its real property and lease it back to its operating affiliate. Negotiations were successful and the debtor filed its motion seeking court approval for the financing arrangement on February 2, 2012. On February 17, 2012, ProLogis filed an objection to the proposed sale/lease-back. It asserted that court approval of the sale/lease-back transaction was not necessary and was unavailable because the debtor had reorganized. The provisions for a sale of real property of the debtor under § 363 applied only to a

---

ed that Wells Fargo was not the trustee. It had resigned before the case was filed. Its proof of claim was disallowed. U.S. Bank, the actual trustee, sought to file a late proof of claim. They ultimately resolved the matter by a stipulated order entered on September 15, 2011, in which they agreed to a secured claim of $5,000,000, an unsecured claim of $3,091,433, and adequate protection payments of $463,538. The order further provided for a payoff of $6.1 million plus monthly interest until paid as full settlement of the bank's claim. The claim was to be paid by November 15, 2011.

8. Loudoun County filed its motion to dismiss on October 11, 2011, and a supplemental motion on December 20, 2011. U.S. Bank filed a "Joinder to Motion to Dismiss" of

Loudoun County, but not a separate motion to dismiss on January 4, 2012. A motion to dismiss, when contested, is a contested matter governed by Fed.R.Bankr.P. 9014. While many of the adversary proceeding rules under Part VII of the Federal Rules of Bankruptcy Procedure are applicable in a contested matter, Fed.R.Bankr.P. 7018 is not one of them. U.S. Bank did not seek formal joinder of Loudoun County's motion and could not have done so. The court accepted U.S. Bank's motion and participation in the proceedings as support for Loudoun County's motion. Both Loudoun County and U.S. Bank were paid all amounts due under the confirmed chapter 11 plan about March 19, 2012. On March 22, 2012, Loudoun County withdrew its motion to dismiss.

trustee or a debtor-in-possession. Since the debtor's plan had been confirmed and the real property had vested in the reorganized debtor, the debtor was no longer a debtor-in-possession. It was a reorganized debtor. The provisions of § 363 are available only to a trustee or debtor-in-possession, not a reorganized debtor.[9] The court sustained ProLogis' objection to the sale, holding that § 363 was not available to the debtor, and necessarily also holding that the reorganized debtor had the full authority to enter into and consummate the proposed transaction without the necessity of court approval. The court's order sustaining ProLogis' objection established, by consent, the total amount due ProLogis under the confirmed plan. This was important because the closing agent needed a release of ProLogis' condominium liens upon payment of the amounts due under the plan and post-confirmation.

ProLogis asserted that dismissal was required and when the case was dismissed, its liens would reattach under § 349. It took the position that it would execute a release of its liens, but only if the release contained language that the liens would reattach upon dismissal of the case, a remedy to which, it asserted, it was entitled. This, of course, would have a chilling effect on any lender or purchaser going forward with the transaction because, if its lien reattached, it would affect title and could have priority over any new financing. Finally, it agreed to execute a release of its liens, but only after stating in open court in the presence of the lender's attorney and representative its belief that it was entitled to dismissal of the case and consequent reattachment of its liens, obviously trying to chill the purchaser's enthusiasm in going forward.

ProLogis' actions, from withdrawing from negotiations at the eleventh hour to taking positions that could adversely affect the sale/lease-back transaction, are the hallmarks of a spoiler. The purposed sale/lease-back would pay ProLogis and all other creditors immediately in the full amount promised under the plan. ProLogis' actions, if successful, would have prevented this. However, if it were successful it would have been unable to improve its position. Either a chapter 7 trustee would attempt to sell the property under the terms of the confirmed plan[10] in which case ProLogis would have received up to the amount due under the plan, or the property would be sold by the bank at foreclosure in which event it was very unlikely that ProLogis would be paid anything.[11]

While the court notes that the lending market is not as robust as it has been in the past, the record is not clear why the debtor did not obtain the required financing initially sought. Within the period required to pay the bank, it became apparent to the debtor that the initial refinancing was not going to be obtained. The debtor had two potential purchasers with which it

---

9. ProLogis was particularly concerned with the applicability of § 363(m) which provides a safe harbor for a lender in certain circumstances. The debtor requested the application of § 363(m) and would likely have obtained it had § 363 been available to it.

10. Unless the bank consented to a sale under 11 U.S.C. § 363(f), a sale free and clear of liens would not be available to a chapter 7 trustee.

11. ProLogis suggested at the hearings that the property could be worth more that the prior valuation. There was no evidence of this. Even if the property sold for more than the value established in the plan so that more money would be available to unsecured creditors, the bank's unsecured claim dwarfed ProLogis' claim.

was justified in entering into negotiations, ProLogis and the party that ultimately purchased the property. It reasonably chose ProLogis. Negotiations were terminated by ProLogis the day before a hearing to approve the anticipated transaction. In pursuing this transaction, the debtor became in default of its obligation to payoff the bank on January 15, 2012, but reasonably anticipated entering into the transaction that would achieve the goal, albeit late by two weeks, and in paying all creditors the amounts due under the plan early. In these circumstances, the court concludes that the debtor was reasonably justified in pursuing its negotiations with ProLogis who appeared, at the time, to be acting in good faith. The debtor could have pursued other avenues had it not engaged with ProLogis and did so when ProLogis withdrew. The alternative party concluded negotiations and, after several court hearings relating to ProLogis' objection to the sale and its motion to dismiss, closed on the transaction.

The circumstances in this case were unusual. Much time was lost by the debtor in this case because Wells Fargo, which held itself out to be the trustee of the mortgage trust, had resigned. While the servicing agent pursued negotiations with the debtor, the negotiations could not be successful because Wells Fargo had no authority to participate or approve any modification. This matter was resolved by an agreed order on September 15, 2011. The debtor immediately made significant progress in satisfying the terms of the stipulated order and reasonably entered into negotiations with ProLogis only to be abandoned the day before the hearing to approve what was reasonably anticipated to be an agreed transaction. ProLogis then proceeded to engage in classic spoiler tactics. At the same time, in light of the promptness with which the debtor reacted to the adversities it faced, payment of the agreed amount to the bank and immediate payment—instead of payment over the remaining four years of the plan—of all amounts due under the plan to unsecured creditors was likely to be achieved. These payments greatly benefitted the creditors. The bank would not likely have received as much at a foreclosure sale in light of the value of the real property it had agreed upon on September 15, 2011. The unsecured creditors would likely have received nothing. In these circumstances, conversion or dismissal was not in the best interests of the creditors or of the estate.

■ The default in making ProLogis' payment could be cured within a reasonable period of time during the pendency of its motion. The proper time to determine whether a default can be cured is when the motion is decided and the court is called upon to fix the reasonable period within which the cure must be made, not at some earlier time. In this case, on March 21, 2011, when the motion to dismiss was denied, the payments had been made and there was no doubt that the defaults had been cured.

■ One additional issue needs to be discussed in connection with ProLogis' motion to dismiss. It asserted that the default in paying it two quarterly payments of $1,846.36 was material. 11 U.S.C. § 1112(b)(4)(N). In context, it was not a material default. The amount was small, $3,692.72, particularly in comparison to the total payout to all creditors of more than $6,588,000 at the closing of the transaction. Nor did ProLogis consider the first missed payment significant. It did not file its motion to dismiss until the second quarterly payment was missed and did not seriously press the matter until negotiations terminated.

ProLogis cannot rely on the late payment of real estate taxes, or the late pay-

ment of the bank. They were not pled in its motion. While Loudoun County filed its own motion that was considered concurrently with ProLogis' motion, Loudoun County withdrew its motion to dismiss. The bank never filed its own motion although it supported Loudoun County's motion. As to the bank's payoff, the default in timely paying the bank was not material. The payment was late. The amount was significant and the debtor was in default. The default, though, was one of timing when payment was reasonably likely to occur in the immediate future. Initially, it was anticipated that the payoff would be about two weeks late. It was ultimately about two months late. It would have been earlier but for the impediments raised by ProLogis.

### Conclusion

For the foregoing reasons, the motion to convert or dismiss will be denied.[12]

12. It is unnecessary to discuss whether the case would have been converted or dismissed if the court had found cause to exist and § 1112(b)(2) not to be applicable. There would have been much merit to converting the case to a chapter 7 proceeding to allow a chapter 7 trustee to determine whether it would be appropriate to go forward with the transaction and thereby assure payment to all creditors, including ProLogis. Dismissal would most likely have resulted in a foreclosure by the bank with no funds available for other creditors. Nor is it necessary at this time to discuss the effect of § 349 or the protection that might be available to protect any purchaser who entered into a transaction that enabled all creditors to be fully paid as provided in the plan of reorganization if the case were to be dismissed.